JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)* **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
David Mursten

### DEFENDANTS
Nick A Caporella

**(b)** County of Residence of First Listed Plaintiff: Georgia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Broward County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jeffrey B. Crockett and Paul J. Schwiep, Coffey Burlington
2699 S. Bayshore Drive PH, Miami FL 33133 (305) 858-2900

Attorneys *(If Known)*
Eugene Stearns, Stears Weaver et al, Museum Tower Suite 2200,
150 West Flagler Street, Miami FL 33130 (305)789-3200

**(d)** Check County Where Action Arose: ☐ MIAMI-DADE ☐ MONROE ☒ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | **Other:** | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 530 General | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee – Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (See VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment
☐ 8 Remanded from Appellate Court

### VI. RELATED/ RE-FILED CASE(S)
*(See instructions)*:
a) Re-filed Case ☒ YES ☐ NO     b) Related Cases ☐ YES ☐ NO
JUDGE: COHN, Hon. James I.     DOCKET NUMBER: 12-civ-62474-JIC

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause *(Do not cite jurisdictional statutes unless diversity)*:
Claim for damages under oral contract within diversity jurisdiction of court
LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ UNLIQUID. DAMAGES
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
DATE: January 3, 2014
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  IFP _____  JUDGE _____  MAG JUDGE _____

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __14-20022-CIV__

DAVID B. MURSTEN,

        Plaintiff,

v.

NICK A. CAPORELLA,

        Defendant.

_____/

## COMPLAINT

Plaintiff DAVID B. MURSTEN brings this action against Defendant NICK A. CAPORELLA and alleges as follows:

### Parties, Jurisdiction and Venue

1. Plaintiff David Mursten is a citizen and resident of the State of Georgia. Plaintiff has been an attorney licensed to practice in Florida for many years with a background and expertise in strategic planning for business and governmental organizations.

2. Defendant Nick Caporella is a resident of Broward County, Florida. Caporella is the Chairman, Chief Executive Officer and founder of National Beverage Inc., which has its principal place of business in Broward County as well.  Public documents indicate that Caporella at pertinent times owned more than 34 million shares of National Beverage, representing approximately 74% ownership of the company with a market value approaching $1,000,000,000 (one billion dollars).

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), because it is a civil action between citizens of different States, and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4. Venue in this district is proper as the defendant is a resident of this district and the facts giving rise to the Plaintiff's claim occurred in this district.

## Factual Allegations

5. Caporella's major business activity is the management and ownership of National Beverage and its affiliates, over which he has exercised complete control. National Beverage is a public company incorporated in Delaware and listed on the NASDAQ stock exchange, with its stock identified as "FIZZ." National Beverage sells a wide selection of flavored soft drinks, juices, sparkling waters and energy drinks, including such brands as Shasta, Faygo and LaCroix. It is managed by a separate but affiliated entity, Corporate Management Advisors, Inc. ("CMA") which is 100% owned by Caporella.

6. For many years, Plaintiff and Caporella have worked closely together. Between 2006 and 2008, Mursten, among other things, was assistant counsel for CMA. Mursten's work during this period included, among many other things, advising Caporella on potential business acquisitions and opportunities.

7. In August 2008, Caporella's son Joseph, the President of National Beverage, sent an e-mail to Plaintiff stating that "Nick [Caporella] has told me repeatedly that he has a new deal for you and has also put some wealth aside for you."

8. In the course of discussions about a potential distribution deal between Plaintiff and National Beverage, Caporella proposed that Plaintiff would work on his behalf on a sale of

2

National Beverage rather than on establishing an independent distribution company. In August 2010, a foreign company ("Company A") had sent Caporella a letter proposing specific terms for the purchase of National Beverage, including a purchase price per share. Based on the number of shares he owned, this offer was worth hundreds of millions of dollars to Caporella personally. Caporella wanted such a transaction to conclude on terms advantageous to himself, and he believed that Plaintiff could assist in the process.

9.  On or about Sunday, September 5, 2010, Plaintiff and Caporella entered into an oral agreement for the performance of services by Plaintiff, for compensation. Complete performance by both parties was contemplated within less than one year, most likely by the end of calendar year 2010, only four months away. Plaintiff would provide advice and counsel to Caporella in relation to the proposed transaction, and during that time would in addition perform any other task requested by Caporella, for the benefit of either Caporella or any of his controlled entities. Plaintiff would forego any other income-earning opportunity as he would be available on a 24 hour, seven a day a week basis to assist Caporella.

10. Caporella referred to the compensation to Plaintiff as a "Dr. Pepper deal," because the vintage Dr Pepper bottle logo had the numbers 10, 2 and 4 on it.[1] Caporella proposed, and Plaintiff accepted, that if a contract with Company A (or a competitive bidder) were eventually consummated, Caporella would pay Plaintiff $10 million dollars of his sale proceeds, or 2% of the total gross amount Caporella personally received, whichever was less. If on the other hand, no deal were ultimately reached with Company A (or a competitive bidder), Caporella proposed,

---

[1] The 10, 2, and 4 originated with a marketing promotion that "Dr Pepper Time" was at 10, 2 and 4 o'clock during the day.

and Plaintiff accepted, that Plaintiff would be entitled to a transfer to Plaintiff of $4 million of shares of Caporella's National Beverage stock, based on the share price between the dates of September 7, 2010 and December 31, 2010, inclusive, that is 293,686 to 360,360 shares, together with the amount of cash equal to Plaintiff's income tax liability for the market value of the stock, and the taxes on the cash. (At the 35% marginal tax rate in effect in 2010, Plaintiff would have received approximately $2,157,000 in cash in order to have $1.4 million after tax to pay federal taxes due on the $4 million stock transfer.) The parties agreed that for the duration of the agreement, Plaintiff would work for "free" – that is, Plaintiff would be paid nothing for his time and efforts (aside from reimbursement of certain expenses), although of Plaintiff was foregoing any other employment opportunity to work for Caporella until the completion of negotiations (successful or unsuccessful) with Company A (or a competitive bidder).

11. Plaintiff raised the issue of the parties' documenting their agreement, but Caporella demurred, stating that Plaintiff could "trust him to keep his promises." Caporella reminded Plaintiff of the handshake deal Caporella had made for the leasing of National Beverage's headquarters office in Fort Lauderdale. Furthermore, Plaintiff was aware that National Beverage's publicly-filed Proxy Statements consistently reflected Caporella's preference, habit and practice in favor of oral agreements for all his employees: "The Company believes in trust, loyalty and commitment from both the Company and the Executive Officers and that employment agreements are not necessary to achieve its goals and meet the needs of the Executive Officers." Plaintiff readily accepted Caporella's preference for a handshake deal as it was consistent with their past dealings and the trust of their long-term relationship.

COFFEY BURLINGTON
OFFICE IN THE GROVE, PENTHOUSE   2699 SOUTH BAYSHORE DRIVE   MIAMI, FLORIDA 33133
T: 305.858.2900   F: 305.858.5261
Email: info@coffeyburlington.com   www.coffeyburlington.com

12. It was Caporella's strongly voiced intention at the time the Agreement was made to sell National Beverage by December 31, 2010 – that is, within the next four months. At the time, the so-called "Bush tax cuts" were set to expire on December 31, 2010, and Caporella urged Plaintiff to do everything possible to help get the deal closed by the end of the year. Plaintiff had every reason to believe that this could occur. Even if negotiations continued into 2011, at most, the parties knew that the deal would either close or die within several months thereafter.

13. Caporella and Plaintiff worked intensely over the Labor Day weekend of September 4-6, 2010 to strategize regarding the offer from Company A and to formulate a response to Company A's expression of interest. Caporella responded to Company A on September 6, 2010 with a letter that he prepared with Plaintiff's input. On September 7, 2010, Caporella sent an email to his top management at National Beverage, commending Plaintiff for his efforts. In an email later that night, Caporella further stated to Plaintiff, "your letter was absolutely fantastic!!!"

14. Several days later, Caporella sent Plaintiff an e-mail saying "this project is the second most critical thing we have ever worked on" (the first being a reference to Plaintiff's work in the early 1980s to help repel a hostile takeover bid by Victor Posner, the corporate raider, of a public company where Caporella had been President and CEO, and Plaintiff had been Special Assistant and Counsel to the President and CEO).

15. Pursuant to his Agreement with Caporella, Plaintiff performed a variety of services to assist Caporella with regard to the proposed sale of National Beverage. These services included but were not limited to:

5

(a) working to get a competitor of Company A to bid against Company A to buy National Beverage and Caporella's shares;

(b) advising Caporella on strategic steps which might increase the price Company A or another bidder would offer for National Beverage;

(c) recommending an investment banking firm to advise National Beverage and Caporella in the negotiations with Company A;

(d) participating in due diligence planning meetings and other strategy meetings with National Beverage's top executives;

(e) providing analysis, advice and counsel on various strategic and tactical issues during negotiations with Company A, including revising a critical presentation which Caporella used in meetings with Company A's representatives.

16. Additional services performed by Plaintiff for Caporella at his direction included

(a) providing advice and assistance to Caporella in the potential purchase of various real estate properties in Florida, Mexico, New Hampshire and New York (including a luxury beachfront hotel);

(b) serving as one of two trustees of the "Founders Trust," a grantor trust created by National Beverage to reward certain National Beverage employees with stock and cash;

(c) reviewing an agreement between Caporella and his brother for Caporella's purchase of his brother's substantial number of shares of National Beverage;

(d) advice and counsel on SEC disclosure issues and presenting maintenance options for the jet used by Caporella's company;

COFFEY BURLINGTON
OFFICE IN THE GROVE, PENTHOUSE    2699 SOUTH BAYSHORE DRIVE    MIAMI, FLORIDA 33133
T: 305.858.2900    F: 305.858.5261
Email: info@coffeyburlington.com    www.coffeyburlington.com

(e) providing advice and assistance in sensitive personal and family matters for Caporella, including wealth management and estate issues;

(f) assisting in Caporella's consideration of an investment opportunity in a medical startup venture; and

(g) purchasing a new Mercedes for Caporella.

17. As expected and required by Caporella, Plaintiff was available to assist at any time, 24 hours a day/ 7 days a week, including holidays. Plaintiff sacrificed his personal interests to remain available to Caporella, wherever and whenever needed or asked.

18. In short, Plaintiff did everything within his power and means to assist Caporella in making a deal to sell National Beverage and otherwise and fully performed on his end of the bargain under the Agreement.

19. In or about December 2010, Caporella told Plaintiff the deal with Company A was on track to conclude by the end of April 2011 (the end of National Beverage's fiscal year)

20. Ultimately, a deal with Company A was not signed by April 2011. Indeed, while the offer from Company A had increased, by June 2011 the parties realized that no deal with Company A would be consummated.

21. On Sunday, June 12, 2011, Caporella and Plaintiff met at a restaurant in Sunrise, Florida. During this meeting, Caporella expressed his great appreciation for all Plaintiff had done and expressed his disappointment that Plaintiff had been working for "free" for a longer period of time than Caporella had expected. Caporella assured Plaintiff that he was "vested and invested," and that Plaintiff had earned the "4" in the "Dr Pepper deal".

22. On October 24, 2011, Caporella formally set the date for the transfer of $4 million worth of shares (and necessary cash for associated tax obligations) for a year later, October 24, 2012. Later on the same day, Caporella sent Plaintiff a text message: "Start date today, October 24 . . . Keep this David." On November 3, 2011, Caporella sent Plaintiff an unsolicited check for 1% of $4 million, i.e., $40,000.

23. During the next month, November 2011, however, on a trip to Mexico, Caporella admitted to Plaintiff certain misconduct that Caporella had committed with respect to National Beverage. Based on Plaintiff's reaction, Caporella exiled Plaintiff from his life, excluded him from the premises of National Beverage, and breached the terms of the parties' oral agreement by refusing to pay the Plaintiff the amount he was entitled to thereunder.

## COUNT I – BREACH OF CONTRACT

24. The allegations of paragraphs 1 - 23 above are reincorporated.

25. Caporella and Plaintiff entered into a valid and binding contract on or about September 5, 2010. That contract was renewed, reconfirmed and re-acknowledged on one or more subsequent occasions, including most recently on October 24, 2011.

26. Plaintiff fully performed all services required of him under the Agreement.

27. Caporella breached the Agreement by failing to transfer to Plaintiff the equivalent of $4 million worth of National Beverage shares (and cash to cover income tax obligations) as promised.

28. As a direct result of Caporella's breach of the Agreement, Plaintiff has been damaged.

8

29. Plaintiff has agreed to pay the undersigned counsel a reasonable attorney's fee for its services.

WHEREFORE, Plaintiff, David Mursten, demands judgment against Defendant, Nick Caporella, for compensatory damages, together with pre-judgment interest, costs, attorney's fees under Fla. Stat. 448.08 and all other and further relief as the Court deems appropriate.

## JURY TRIAL DEMAND

Plaintiff, David B. Mursten, hereby demands trial by jury on all claims and all matters so triable as a matter of right.

```
                                COFFEY BURLINGTON, P.L.
                                Counsel for Plaintiff
                                2699 South Bayshore Drive, Penthouse
                                Miami, Florida  33133
                                Tel:  305-858-2900
                                Fax:  305-858-5261

                           By:  /s/Jeffrey B. Crockett
                                Fla. Bar No. 347401
                                Paul J. Schwiep
                                Fla. Bar No. 823244
                                jcrockett@coffeyburlington.com
                                lwisman@coffeyburlington.com
                                service@coffeyburlington.com
```

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |  |
|---|---|---|
| *Plaintiff(s)* <br> v. <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*

 

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

 

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____ , a person of suitable age and discretion who resides there, on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is designated by law to accept service of process on behalf of *(name of organization)* _____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify)*:
.

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc: