```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2                     MIAMI DIVISION
 3            Case No. 14-CV-60014-COHN/SNOW
 4
    DAVID B. MURSTEN,
 5
 6
                   Plaintiff,
 7
    vs.                          FORT LAUDERDALE, FLORIDA
 8                               SEPTEMBER 11, 2014
 9
10  NICK A. CAPORELLA,
    8100 S.W. 10th Street,
11  Suite 400, Fort Lauderdale,
    Florida, et al.,
12
13                 Defendants.
14
15      TRANSCRIPT OF HEARING ON PLAINTIFF'S MOTION TO COMPEL
               BEFORE THE HONORABLE LURANA S. SNOW,
16              UNITED STATES MAIGISTRATE JUDGE
17  APPEARANCES:
18
    FOR THE PLAINTIFF:
19
                              COFFEY BURLINGTON, P.L.
20                            2601 South Bayshore Drive
                              Penthouse
21                            Miami, Florida 33133
                              BY: JEFFREY B. CROCKETT, ESQ.
22
23
    REPORTED BY:          JERALD M. MEYERS, RPR.
24  TELEPHONE:            954-431-3757
25
    FOR THE DEFENDANTS
```

```
 1

 2

 3
                         WALDMAN TRIGOBOFF HILDELBRAND MARX
 4                       & CALMAN, P.A.
                         500 East Broward Boulevard
 5                       Suite 1700
                         Fort Lauderdale, Florida  33394
 6                       BY: GLENN J. WALDMAN, ESQ.

 7

 8

 9

10  ALSO PRESENT FOR THE NON-PARTIES:

11

12

13

14                       KRUPNICK CAMPBELL MALONE, ET AL
                         12 Southeast 7th Street
15                       Suite 801
                         Fort Lauderdale, Florida 33301
16                       BY: WALTER G. CAMPBELL, ESQ.

17

18

19

20
    REPORTED BY:         JERALD M. MEYERS, RPR.
21                       J.M. COURT REPORTING, INC.
                         1601 N.W. 109TH TERRACE
22                       Pembroke Pines, FL 33026-2717
                         Telephone: 954-431-4757
23                       E-Mail Address: CRJM@AOL.COM

24

25
```

1   (Call to order of the court)

2          THE CLERK:  Calling case number 14-60014, David

3   Mursten versus Nick Caporella.

4          MR. CROCKETT:  Good afternoon, Your Honor.  Jeff

5   Crockett, Coffey Burlington representing the plaintiff.

6          THE COURT:  All right.

7          MR. WALDMAN:  Good afternoon, Your Honor.  Glenn

8   Waldman.  I represent the defendant Nick Caporella.

9          MR. CAMPBELL:  And Walter Campbell representing the

10  witnesses.

11         THE COURT:  All right.  We are here on the plaintiff's

12  motion to compel answers to deposition questions on payments to

13  trial witnesses.  So you may proceed.

14         MR. CROCKETT:  Thank you, Your Honor.

15         Let me know if I am echoing like the last attorneys

16  were all trying to.

17         THE COURT:  Loud and fast.  They should all go to New

18  York where I used to be from.  Both sides.

19         MR. CROCKETT:  Your Honor, this is an issue where

20  there were directions not to answer and decisions not to answer

21  by witnesses at a deposition relating to payments to those

22  witnesses, and that's the relatively clear cut issue.  I have

23  attached the deposition excepts to the court.

24         As to the facts of the case, the court is familiar

25  with the allegations.

```
 1            THE COURT:  Yes.  I don't need to hear all of that.
 2            MR. CROCKETT:  You have written about that in numerous
 3   orders.
 4            THE COURT:  These two cases are the ones that keep
 5   coming back.  The two of you.  So go ahead.
 6            MR. CROCKETT:  And the basis for this motion is our
 7   attempt to get evidence relating to the payments from the
 8   defendant who controls their employer to various trial
 9   witnesses.
10            Your Honor, you know, the defendant in the course or
11   in his role as CEO and majority stockholder, in fact, controls
12   the payments to many of the people who he has called as
13   witnesses who he has listed and who are going to be trial
14   witnesses, and what we are trying to develop is bias, motive
15   and interest evidence.
16            I don't think there is any dispute that we could bring
17   it out at trial.  The defendant is the one who decides how much
18   you are going to be paid next year, correct, and that goes to
19   interest.
20            If this were on the criminal side, there would be
21   Brady and Giglio.  There would be an affirmative obligation to
22   disclose.  That doesn't exist, but we do have the right to ask,
23   and that's all we are trying to do.
24            There are really two subjects, Your Honor.  Some of
25   this evidence we have, but one month after the lawsuit was
```

 1   filed, something was created, 8100 Partners.

 2          So we have to assume this was created by the defendant

 3   who controls the companies.  One month after the lawsuit.  It

 4   was confidential.  In some manner $20,000,000 was given to a

 5   management group, meaning his witnesses, Crawford, Bracken,

 6   Madden, et cetera.

 7          We don't know any details about it, Your Honor.  We

 8   don't know whether it is in the defendant's discretion who gets

 9   what of this.

10          Presumably, because it is the management group, it is

11   these trial witnesses who are relevant, and we are just trying

12   to find out what it is.

13          Is it a clear bribe?  Is it something that is in the

14   discretion of the defendant which would be a perfectly proper

15   area to develop and, you know, is it confidential?

16          There has been no legitimate explanation provided.

17   There may be one.  It may not be relevant, but certainly the

18   inference is there.

19          I mean, this is a case and, you know, we have gone

20   into the, you know, very serious prima facie although disputed

21   inferences of false testimony to support the defendant's case.

22          So this is not simply supposition.  It is standard

23   inquiry into bias, motive and payments from the defendant to

24   witnesses or payments that he may control.

25          The second matter is the issue of a specific payment

1  to Margie Madden who is the liaison from the defendant to his

2  board.  In other words, a long-term high ranking employee of

3  National Beverage Corporation, and I think we attached the

4  wrong exhibit.  In one of our exhibits we refer to an e-mail.

5  It should be exhibit 7.  I brought another copy for counsel.

6  May I approach?

7            THE COURT:  Yes.

8            MR. CROCKETT:  You know, of course, the entire case is

9  about what we say is a generous but actual offer from the

10 defendant to the plaintiff for essentially $4,000,000.

11           The very day that, you know, this is within 24 hours

12 of what we say that contract was made, that deal was made,

13 there was an e-mail from the defendant saying these two people,

14 Madden and my client had done this wonderful miraculous thing,

15 okay, and what happens in 2011, Ms. Madden the other person,

16 the other employee with no contractual requirement to this,

17 perhaps based on an oral agreement, I don't know, but receives

18 150,000 shares in National Beverage Corporation worth

19 $3,000,000, plus the money needed to pay tax on that, plus

20 dividends, adding up to more than $4,000,000.

21           So it is very, very similar to what they say the

22 defendant would never do, and we are saying not only is this

23 consistent with his character, he did it in parallel

24 circumstances.

25           And, moreover, the plaintiff knows about it because he

1   was there at the time and was involved in the transfer of

2   stock, but what we were not able to do is ask Ms. Madden, not

3   only did she receive it, which we know she did, but why was

4   there an oral agreement?  What was the explanation?  What was

5   the amount given?

6           So I think both of these, Your Honor, are, you know,

7   you have read the transcripts, I think.  They are very

8   judicially being explored, but they are simply proper areas for

9   factual inquiry that we should be allowed to conduct the

10  discovery.

11          MR. CAMPBELL:  May it please the court, I sat through

12  these depositions, and I am a little offended by the way some

13  of the tactics the plaintiff is taking towards other employees

14  at NBC and CMA.

15          You have an absolute I believe obligation under the

16  Florida Constitution, Article 1, Section 23, to protect the

17  rights of privacies of individuals that are not parties to a

18  lawsuit.

19          THE COURT:  They are going to be defense witnesses,

20  though, correct?

21          MR. CAMPBELL:  They might be, but may I finish my

22  reasoning with you?

23          THE COURT:  Yes.

24          MR. CAMPBELL:  But this information concerning these

25  payments were, in fact, investigated by Mr. Crockett during

1    days of deposition, and what he found out, and not with

2    specificity as to the amounts because this is, in fact, private

3    to Ms. Madden.  She was more than a 30 year employee.

4         There was a Founders Trust that was started, a

5    document started in the 1990's that said, "For employees that

6    are with us for 30 years, you might be entitled, at some point

7    in time, to certain stocks.  Options."

8         Again, this is 1990, having nothing to do with

9    Mr. Mursten or his claim for breach of an oral contract.

10        When the time came due, Ms. Madden was entitled to

11   receive compensation pursuant to this document, which is in

12   existence and which they know about, for which they inquired at

13   deposition, but I don't believe they are entitled to know or

14   put on a record for the public to see how much that was worth

15   to my client.

16        I have cited to you cases that have said clearly it

17   would be prejudicial to my client to release this information.

18   That's the Founders Trust.

19        The second issue is this 8100, LLC, which I read

20   Mr. Crockett's memorandum on this, and I was surprised that he

21   would believe that this corporation, which was started in the

22   second week of January of 2013, had anything to do with his

23   complaint which was filed on 12-12-12.

24        8100 is not a corporation which has given these people

25   any money.  8100 is, in fact, an investment group that gave

1  their money to NBC to get some leverage stock pay out.

2       It has nothing to do with Mr. Caporella giving any

3  money to any witnesses.  This is, in fact, a document which

4  shows that Mr. Bracken who is, in fact, in charge of it, was as

5  investor.

6       He did not receive any money, and again under the

7  rights of privacy, he would not be entitled to any of this

8  information as it relates to Mr. Bracken's investment in this

9  8100, LLC, and we would ask, respectfully, the court to look at

10 the case law which clearly says that he has to establish that

11 it is reasonably calculated to lead to the discovery of

12 admissible evidence and is very important to him, and in the

13 courts, the state court and the federal courts have done a

14 balance of interest, and they put the balance of the individual

15 at a higher status then the rights of Mr. Crockett's clients to

16 come in and inquire as to my client's personal assets and

17 personal funds.

18      I would respectfully request that you deny his motion,

19 because if he wants to say bias, if he wants a jury, he can say

20 they are employees.  They have been there for 30 years or 15

21 years.

22      He doesn't have to take their personal documents that

23 they worked very hard to get and show it to anybody.  It would

24 be a travesty to take these persons' rights of privacy and let

25 Mr. Mursten and his lawyers, in fact, use it for whatever

1   purposes they have tried to use it.

2          I would respectfully request that you deny the motion

3   as to these two issues.  It does not stop him from saying to a

4   jury, "Folks, these people worked for these people.  They get

5   paid for it by them."

6          They can make their argument, but they cannot get my

7   personal documents.

8          MR. WALDMAN:  Good afternoon, again, Your Honor.

9          First of all, from the 30,000 foot view, the two

10  individuals that we are talking about here, one is George

11  Bracken.  I know you have heard his name before.  He is the CFO

12  of the publicly traded company NBC.

13         The other person, you have heard her name, Margaret or

14  how she is known to her friends, Margie Madden is the corporate

15  secretary.

16         These are not parties.  The company that they worked

17  for, NBC or its manager, CMA, are not parties.

18         So what you have here is an attempt by Mr. Crockett on

19  behalf of his client, the plaintiff, Mr. Mursten, trying to get

20  documents and personal information about employees who are not

21  parties of companies and who are not parties.  There is no

22  grounds for that.

23         What Mr. Crockett said when he stood up here and made

24  his presentation to you was that, "I want information about

25  payments from the defendant."

1        Well, the defendant, the only defendant in this case

2   is Nick Caporella individually.  Not NBC.  Not CMA.

3        Whatever funds, whatever payments, whatever transfers

4   that are the subject of this motion are not flowing to

5   Mr. Bracken, if at all, or to Ms. Madden, if at all, from the

6   defendant, Mr. Caporella.

7        So on that basis alone, respectfully, I think you

8   should deny the motion.

9        The second thing I wanted to comment on behalf of

10  Mr. Caporella is, and this is not just hyperbole.

11       It is an outrage for him to stand up here and say

12  things like, and I am quoting, and Your Honor heard him, we

13  have to assume he also said, "We don't know," and then he turns

14  around and says, "I am entitled to know if some of these monies

15  were paid in respect of a bribe."

16       I think any lawyer that stands up in court,

17  particularly in federal court before you, Judge Snow, and says,

18  "I don't know, but I would like to find out if any of these

19  transfers were to bribe a witness," and in theory suborn

20  perjury, should have to show first a good faith basis for

21  making that statement.

22       Based on his opening remarks that, "We don't know, and

23  we have to assume, and maybe it is a bribe," that is the

24  classic fishing expedition, and in the circumstance of this

25  case, where it is an oral agreement for millions of dollars

1   struck in the middle of the night in a hotel lobby with no

2   witnesses and not memorialized in a text, in an e-mail, in a

3   letter, in any writing where 30,000 plus pages have been

4   exchanged between these parties and the companies should not be

5   allowed.  It shouldn't be permitted.

6        These individuals should not be made to produce

7   anything.  They have already been bothered enough.

8        THE COURT:  Nobody specifically answered.  Are they

9   going to be witnesses?  Because, if so, I can't imagine a judge

10   not allowing him to go into this on cross.

11        As Mr. Crockett said, in a criminal case the

12   government would be required to turn it over.  So if there are

13   going to be witnesses, I think there is relevance here.

14        MR. WALDMAN:  Well, if they are witnesses.  Just

15   because a witness has the status of potentially being called as

16   a witness, it may or may not be a witness called by us, and I

17   don't know if they will be called by Mr. Crockett.

18        We didn't set their depositions.  These are non-party

19   fact witnesses.  These folks were called by Mr. Crockett you

20   have to remember now he wishes to impeach.

21        THE COURT:  Were they on your witness list?

22        MR. WALDMAN:  And his, too.

23        THE COURT:  Okay.  But were they on yours?  I don't

24   care about his.

25        MR. WALDMAN:  I think they were, but the point is,

1    Your Honor, everybody who takes the witness stand is subject to

2    have all of their private net worth, payments, salaries,

3    holdings, bank statements, transfers from other people made

4    known?

5         I just don't know.  There is obviously discretion

6    built into this.  I recognize that but, Your Honor, in your

7    statement to me or in your question, rather, made it seem like

8    that ipso facto all of this is fair game and, respectfully, I

9    don't think it can or should be, absent some type of good faith

10   showing that these witnesses are lying because they are

11   receiving, as you read in this motion, monies out of a slush

12   fund.

13        Take a look at this motion that Mr. Crockett filed.

14   At page 4 he says, as one of his two grounds on which he is

15   proceeding, that one of the issues in particular in dispute

16   here is the generosity of the defendant.  That is not true.

17        This is a one count claim for a breach of an oral

18   contract.  This is not a claim for breach of generosity, and I

19   have said this to you before, and I don't mean to be flippant.

20        Mr. Mursten, the plaintiff, is not a charity case for

21   whom Mr. Caporella is responsible.  It doesn't matter if

22   Mr. Caporella gave, for example, Ms. Madden a card with a

23   $10.00 bill in 2011 or a car or a purse or anything else.  That

24   does not mean that Mr. Mursten is entitled to the same thing.

25        THE COURT:  True.

1          MR. WALDMAN:  And, in fact, none of this, if you read

2     the motion and drill down on it again, none of this stuff came

3     from Mr. Caporella.  None of it.

4          What you heard Mr. Campbell say is correct and what

5     Mr. Crockett conveniently left out, Ms. Madden, apparently,

6     received a transfer of some stock in NBC under a plan, a design

7     to incentivize long term employees and reward them for their

8     long time service.

9          You can only be eligible if you are an employee on the

10    day that NBC became a public entity.

11         Ms. Madden has been working every day, 7 days a week,

12    and I am not kidding, 7 days a week most years, years in the

13    plural without vacation, and she was apparently rewarded with a

14    transfer of some shares.

15         Mr. Mursten does not claim that he would be eligible

16    under that Founders Trust and, therefore, because Ms. Madden

17    was eligible and may have received a transfer of some shares

18    for her long term service, like a professor or who is tenured,

19    does not mean that someone who is a visiting professor from

20    Florida State University, you may remember that's where

21    Mr. Mursten went, would be entitled to the same status as a

22    tenured professor as here, a part time personal employee of

23    Mr. Caporella, that is the claim, not an employee of the

24    company.  He is saying, "Well if it was good enough Ms. Madden,

25    it should be good enough for me."

1           That isn't grounds to allow this wholesale fishing

2    expedition into these types of matters.

3           Let me just address, if I may, if you will indulge me

4    on just this separate matter of this so-called 8100 Partners

5    which I believe is a partnership.

6           Because there was a press release I believe in 2013,

7    after this alleged employment agreement ended in 2011, after

8    the date of the supposed breach, Mr. Mursten had already been

9    gone for more than a year, a partnership is formed, and in

10   connection with that partnership apparently, and it is a

11   complicated business transaction, Your Honor, where there are

12   partners involved in this partnership who are not management

13   level employees of NBC.

14          They are outsiders to this case.  Outsiders to the

15   company.  So this is a legitimate transaction involving

16   individuals who are investors who, by the way, put up their own

17   money to invest in this.

18          They put up their own money in the hopes of a rate of

19   return, a modest rate of return which actually received the

20   imprimatur of a fairness opinion of outside counsel that

21   happened when?  In 2012.

22          That program or project where this partnership was

23   going to be formed and these investors would invest all

24   happened sometime in the mid to the fall of 2012, well prior to

25   Mr. Mursten ever making or bringing his first lawsuit in

1  December of 2012.

2          The reason I tell you that is to show you that it is

3  not what Mr. Crockett says about a good faith or factual basis

4  to say so, which is this partnership and this plan for these

5  investors was, the underpinning of it was in 2012, well prior

6  to the filing of a lawsuit, and what Mr. Crockett, Your Honor,

7  is saying is, "No.  You know, once Mr. Caporella found out that

8  he was being sued by Mr. Mursten, he devised different ways to

9  reward," or to use his words, "bribe witnesses by making them

10 loyal to him and perhaps perjuring themselves because they were

11 receiving transfers of monies."

12         So that is why I say to you he has got no good faith

13 basis, zero, and to come into court and just to say, "I think

14 there could be a bribe" isn't enough.

15         Let him make his case at the time of trial before

16 Judge Cohn and try this, but I know discovery is different from

17 admissibility, but you are not allowed to tear into witnesses

18 and turn their personal lives upside down just because you say

19 they may per chance be biased.  It is not enough.

20         Respectfully, Your Honor, I ask that you consider this

21 case on the whole.  Look at it for what it is.

22         This really is a shakedown of a 78 year old wealthy

23 individual that refused to employ, refused to reward

24 Mr. Mursten as he did with other long term employees, and this

25 is a total fabrication.

1              The motion itself is a fabrication because

2    Mr. Crockett admitted it when he said, "I do not know, and I

3    must assume."  On that basis I ask that you deny it.

4              THE COURT:  Mr. Crockett, anything further?

5              MR. CROCKETT:  I think the court has the issues.  We

6    are in discovery.  I am not here to make allegations.

7              I am here to investigate the facts, investigate the

8    facts of bias.  What 8100 Partners, the press release said this

9    was to a management group.

10             One of the questions I asked Mr. Bracken was, "Did you

11   actually pay money for this, or was this something that was

12   paid for you?

13             "Objection.  You cannot answer that."

14             So I am being prevented from getting into whether this

15   was a discretionary payment.  Of course, Mr. Caporella controls

16   everything as his corporations do.

17             So the jury will easily see through that, that the CEO

18   and three quarters owner controls what the companies do.

19             His name is on all of the checks that are signed.  So

20   that's a sham argument.  It is a simple started inquiry into

21   bias, interest and motive.

22             It is perfectly proper discovery.  And as for the

23   Madden issue, it is very similar.  Of course, we are not

24   arguing because one employee got 4,000,000, the other got

25   4,000,000, but it does tend to support points such as that the

1   defendant tends to give stocks and tends to give money to pay

2   the tax on stocks, which is one of the relevant issues.

3          The amount is similar.  The circumstances are similar.

4   They are both staring in the same e-mail.  So it does give us

5   some support, but we are in discovery, Your Honor, and we are

6   entitled to it.

7          MR. CAMPBELL:  Can I just finish with this quote from

8   all of the cases that say exactly the same thing, and just so

9   the court knows this is the Capko Properties case that I cited.

10         These cases say it is axiomatic that information

11  sought in discovery must relate to the issues involved in a

12  litigation as framed in all pleadings.

13         This is a claim by Mr. Mursten against Mr. Caporella

14  who is a majority owner of CMA and NBC.

15         It is a breach of an oral contract.  There was no

16  specificity as to terms.  It was done at 2:30 in the morning,

17  allegedly, at a local hotel.

18         The information he is requesting is information

19  personally to these folks and, yes, there was an investment.

20         Ms. Madden invested 30 years of her life.  He knows

21  about the Founders Trust.  He inquired about the Founders

22  Trust.

23         It is in the discovery, and he was told exactly who

24  would be entitled to some type of reimbursement for their

25  loyalty to the company, but he is not entitled to ask my

1   client, who has nothing to do with this oral contract and never

2   knew about an oral contract, "Okay, well, how much money did

3   you get?"

4          That's private individual information, and that's

5   exactly what all of these cases say.

6          THE COURT:  Well, virtually everything that ever gets

7   asked in a deposition is private information.

8          MR. CAMPBELL:  With due respect I don't think --

9          THE COURT:  I mean, there are some things on the

10  public record, but if I sustained an objection every time he

11  asked for private information, nobody would ever get discovery.

12         MR. CAMPBELL:  Well, you know, that's what these cases

13  stand for is we do have the right to privacy, and they deal

14  with financial information.  That is what all of the cases that

15  I have cited stand for.

16         THE COURT:  I know.  I have been doing this for 28

17  years, Mr. Campbell.

18         MR. CAMPBELL:  I know you have been doing it for a

19  while, and I've done it for a year or two.

20         THE COURT:  All right.  I am done.  I usually don't go

21  back and forth indefinitely.

22         Is there a confidentiality order in place in this

23  case?

24         MR. CAMPBELL:  Yes, Your Honor.

25         THE COURT:  All right.  You know, I know the other

```
 1   side thinks this is a shakedown kind of case, the defendants
 2   side, and I know that this is private.
 3        I understand these people are not happy about this,
 4   but as far as I am concerned, given the nature of this case, it
 5   is clearly relevant.
 6        Now, whether Judge Cohn will allow it at trial is a
 7   different question.  Whether these people are testifying at
 8   trial is a different question.
 9        I am going to allow him to inquire into this.  If
10   these depositions are filed in any way, they will be filed
11   under seal, and this testimony will be subject to whatever
12   confidentiality order is in place, but at least right now I
13   think they are entitled to it.
14        Mr. Campbell, in the future, you know, I let this go
15   because it is a Florida Constitutional argument, but the
16   practice in this court, by and large, certainly what I require
17   is that the witnesses answer the questions unless it is a
18   privilege.
19        If it is privileged, then they can be instructed not
20   to answer, but I am not going to be doing this every 5 minutes.
21        So in this case I am not fussing about it.  I am not
22   going to require the defendants to pay for it because these are
23   non-parties, and it is financial information, but please don't
24   think that you can instruct witnesses as a rule not to answer
25   in federal court because that's not the way it works unless it
```

1  is privileged.

2          So just be advised that, you know, we don't have

3  telephone calls in the middle of the night and we don't come

4  back.  If it is not a proper question, then the answers won't

5  be allowed into evidence.

6          MR. CAMPBELL:  So we can clear some matters up, Judge,

7  we are not parties.  So the confidentiality agreement would

8  not, until you say it applies, apply to us.

9          THE COURT:  All right.

10          THE COURT:  Well, I just did.

11          MR. CROCKETT:  The order does say it applies to

12  third-party production as well.

13          MR. CAMPBELL:  Well, let me bring up an issue which I

14  am not sure you even saw the pleading because it was last

15  Friday.

16          Counsel filed some papers, and in those papers he had

17  confidential information which was, according to my

18  understanding ruled by you, that, "Hey, we are not going to do

19  that," and I called Mr. Crockett and he agreed it was a

20  mistake, and I am willing to take his word that it was an

21  honest mistake.  I am not telling you it was intentional.

22          He filed a motion to have the information he filed

23  inappropriately removed to be put in with redacted information.

24          Unfortunately, the clerk has not taken that document

25  out and put the redacted in so that anybody can get, if they

1   are concerned, can get on the computer.

2          THE COURT:  Well, you need to take that up with the

3   clerk because it needs to be fixed.

4          MR. CROCKETT:  I agree.  Our agreed motion was we need

5   your order to do it.  Judge Cohn agreed.  He entered an order

6   as agreed; an order of the clerk to do it already.  That has

7   been done.

8          MR. CAMPBELL:  So we will follow-up with the clerk

9   again, but that is the problem with some of these

10  confidentialities

11         THE COURT:  I realize that, and I know it is

12  sensitive.  On the other hand, I am looking at this and trying

13  to put myself in the witness' place.

14         I understand everybody's position, but this is not

15  like the most damaging embarrassing thing I could ever think

16  about.

17         I, frankly, wonder what the big deal is.  I understand

18  the defense position is this is a frivolous case, and it may

19  well be.  I don't know, but it is here.  It is before us, and

20  this is what we need to do.

21         So this will be subject to confidentiality and make

22  sure any of this part of the depositions are filed under seal.

23  Okay.

24         MR. WALDMAN:  May I have just one housekeeping matter?

25  May I take another minute?

```
 1          THE COURT:  Sure.

 2          MR. WALDMAN:  Thank you for the time.  It is

 3  appreciated.

 4          We were here at the last hearing, and you may remember

 5  you ordered the plaintiff to say, "Did you file tax returns for

 6  particular years or did you not," because we were met with

 7  objections.

 8          THE COURT:  Right.  Right.

 9          MR. WALDMAN:  And you entered that order.  We got the

10  response in yesterday.  The response is somewhat equivocal.  It

11  says they haven't been prepared.  It doesn't say anything about

12  not having been filed.

13          I only wanted to do ask, and perhaps move ore tenus,

14  if that is permitted, to have Mr. Mursten sign a request for a

15  copy of tax return so that we can send it to the IRS, because

16  if he actually has filed these tax returns, and maybe just

17  saying he has not, I want to see those tax returns and see how

18  he treated the income that he received from my clients in the

19  years when he said through his lawyer "I haven't filed

20  returns."

21          I am not so sure that is right.  So turn about is fair

22  play.  So all I am saying is it may well be that he actually

23  filed tax returns, and he is just telling us he didn't.

24          So I would like to confirm it with the IRS by having

25  Your Honor tell Mr. Crockett to have Mr. Mursten sign this form
```

1  that I have in my hand that is already filled out that just

2  Mr. Mursten signs and gets then sent by Mr. Crockett, or me, to

3  the IRS.  And if there are returns, they will send them to me.

4        I think that would be an entirely appropriate request

5  as a follow up to what we did just last week.

6        MR. CROCKETT:  I think they should file a motion, Your

7  Honor.  They have testimony from the plaintiff sworn that he

8  didn't file them.  If they want to file a motion, maybe that

9  will be granted, but, you know, I am not suggesting that we

10  need a hearing.

11        THE COURT:  All right.  File a motion, but I will tell

12  you what I am going to rule on it is that it will be up to, or

13  I will have Mr. Crockett do it, and I trust him as an officer

14  of the court.

15        If he gets information back from the IRS saying that

16  there are returns, that they be turned over to you.

17        I feel comfortable having him sign something allowing

18  you to get something from the IRS.

19        MR. WALDMAN:  I am fine with that, of course, but the

20  make work of, since you have given us an advisory opinion of

21  having to put something in writing, just to come around back --

22        THE COURT:  Well, because I haven't seen the answers.

23  They, in fact, may not be equivocal, and if they are not

24  equivocal --

25        MR. WALDMAN:  Either way.  Even if he said, "I never

1    filed them," I don't trust this witness.

2          THE COURT:  It is not make work.

3          MR. WALDMAN:  I will file the motion.

4          THE COURT:  And the reason why I say that is I do an

5    enormous amount of stuff that ends up being in an appellate

6    capacity, and I rely on that docket sheet, and it is important.

7          I know it seems like make work, but the reason for it

8    is so that whoever is looking at this down the pike can look

9    down and see how things happened and where they happened, and

10   looking at it they are not going to be seeing a transcript of

11   this hearing.

12         MR. WALDMAN:  Understood.  So I will file that simple

13   motion.

14         THE COURT:  You can make it real simple.

15         MR. WALDMAN:  I will.  And with Your Honor's

16   permission, all I can say is that the advisory opinion was that

17   it would be granted.

18         THE COURT:  No.  Don't.

19         MR. WALDMAN:  I won't.  I won't then.  I won't.  Okay,

20   but thank you for giving us the preview so that we know where

21   we are headed.

22         THE COURT:  Well, because if you had filed an ore

23   tenus motion that would have been the ruling.  I am just

24   telling you to write it down.

25         MR. WALDMAN:  Understood.  Well, we have that part in

1    the transcript.  So thank you.

2              THE COURT:  Okay.

3              (Whereupon the proceedings were concluded)

1

2                    C E R T I F I C A T E

3          I hereby certify that the foregoing is an accurate

4   transcription of proceedings in the above-entitled matter.

5
    SEPTEMBER 26, 2014        S/JERALD M. MEYERS
6   _____          _____
         DATE                 JERALD M. MEYERS, RPR-CM
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25